The Honorable Robert J. Bryan
Trial Date: August 19, 2019

IN THE UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

AT TACOMA

| | |
|---|---|
| DONALD VARNEY AND MARIA VARNEY,<br><br>          Plaintiffs,<br><br>     v.<br><br>AIR & LIQUID SYSTEMS CORPORATION, ET AL.<br><br>          Defendants. | Case No. 3:18-cv-05105-RJB<br><br>MOTION FOR SUMMARY JUDGMENT OF DEFENDANT JOHN CRANE INC.<br><br>ORAL ARGUMENT REQUESTED<br><br>NOTE ON MOTION CALENDAR:<br><br>MARCH 29, 2019 |

## I.     **RELIEF REQUESTED**

Pursuant to Fed. R. Civ P. 56, Defendant John Crane Inc. ("JCI") respectfully requests this Court grant summary judgment in favor of JCI against Plaintiffs' Complaint.  As set forth below, there is no admissible evidence supporting a reasonable inference Plaintiff Donald Varney worked with any asbestos-containing products attributable to JCI.

Decedent Donald Varney, through his wife Maria Varney, alleges he was diagnosed with mesothelioma as a result of his exposure to asbestos products manufactured or sold by a large number of different entities, including JCI.  The only materials supporting Plaintiffs' claims

43370.1 2909.43469

against JCI, however, are (1) an inadmissible hearsay Declaration of the Decedent Donald Varney and (2) a report by Plaintiffs' causation expert Dr. John C. Maddox, which relies solely on Mr. Varney's hearsay declaration for his opinions with respect to JCI. Mr. Varney's hearsay declaration lacks any independent indicia of reliability. In fact, the undisputed evidence from Mr. Varney's own treating physician shows that on the date that Mr. Varney signed the declaration, as well as several days prior, he was non-responsive to stimuli and incapable of engaging in conversation. Further, Mr. Varney's wife testified that she had never heard Mr. Varney talk about work with "gaskets" or "packing" products prior to his death. In short, the declaration is inadmissible hearsay, bearing no independent indicia of reliability, and which does not fall within any recognized exception to the rule against hearsay.

In the alternative, dismissal as a matter of law is still warranted because Mr. Varney's declaration does not support a reasonable inference that any JCI products Mr. Varney allegedly worked with either contained asbestos or were worked upon with sufficient frequency to constitute a "substantial factor" to Mr. Varney's claimed injury.

## II.    STATEMENT OF FACTS

JCI provides the below statement of facts solely for the purpose of providing the Court a complete outline of the events thus far in anticipation of Plaintiffs' response. The inclusion of certain evidence in the section below is in no way an adoption by JCI as to the veracity and/or admissibility of such evidence. JCI specifically reserves the right to challenge the admissibility and/or veracity of such evidence when the appropriate time arises.

MOTION FOR SUMMARY JUDGMENT OF
DEFENDANT JOHN CRANE INC.
Case No.: 3:18-cv-05105-RJB - 2

SELMAN BREITMAN LLP
600 University Street, Suite 1800
Seattle, WA 98101-4129
T: 206.447.6461  F: 206.588.4185

43370.1 2909.43469

**A.  Procedural History**

On February 2, 2018, Plaintiffs Donald and Maria Varney filed suit against 45 Defendants, including JCI, in Pierce County Superior Court alleging personal injury for Donald Varney and loss of consortium for Maria Varney resulting from asbestos related injuries to Donald Varney due to exposure from products manufactured, produced, distributed, supplied or otherwise placed into the stream of commerce by the Defendants.[1] On or about February 12, 2018, Defendant General Electric Company removed this matter to the United States District Court for the Western District of Washington on jurisdictional grounds.[2]

**B.  Nature of Plaintiffs' Claims**

Plaintiff Donald Varney alleges he was diagnosed with mesothelioma as a result of his exposure to asbestos and asbestos containing products from 1939 through 1972.[3]  More specifically, he alleges such exposure occurred (1) during his time as a marine machinist at Puget Sound Naval Shipyard and Hunters Point Naval Shipyard from 1957 to 1972, (2) through personal automotive exposure from 1939 to 1957 and (3) through his father who was an auto mechanic from the 1940's to 1950's.[4] Before his deposition could take place, Plaintiff Donald Varney passed away on February 8, 2018.[5]

---

[1] See *Complaint for Personal Injuries*, attached as Exhibit 1 to Declaration of Daira Waldenberg, at Paragraphs III, V.

[2] See Declaration of Daira Waldenberg.

[3] See *Complaint* at Paragraph III.

[4] *Id*.

[5] See Declaration of Daira Waldenberg and *Death Certificate of Donald Varney*, attached as Exhibit 2.

MOTION FOR SUMMARY JUDGMENT OF
DEFENDANT JOHN CRANE INC.
Case No.: 3:18-cv-05105-RJB - 3

SELMAN BREITMAN LLP
600 University Street, Suite 1800
Seattle, WA 98101-4129
T: 206.447.6461  F: 206.588.4185

43370.1 2909.43469

C.  **Inadmissible Evidence Produced by Plaintiffs**

Plaintiffs have produced two documents in discovery allegedly supporting their claims against JCI:  (1) Declaration of Donald Varney and (2) Report of John C. Maddox, M.D.  Both of these documents are inadmissible against JCI according to the Federal Rules of Evidence.

1.  Declaration of Donald Varney

On or about June 26, 2018, Plaintiffs' counsel produced a document entitled "Declaration of Donald Varney" (herein referred to as "Declaration").[6]  The Declaration, presumably signed by Donald Varney on February 7, 2018, goes on to provide generalized testimonial evidence of his alleged exposure to asbestos as it relates to the named Defendants of the subject lawsuit.  The first paragraph of the Declaration reads as follows:

> I have personal knowledge of the facts and circumstances set forth below.  I make these statements regarding the cause and circumstances of my death under a sense of impending death from mesothelioma.  I have no hope or expectation of recovery from this terminal disease.[7]

In addition, the Declaration states he worked as a marine machinist from 1957 to 1972 at two different shipyards and during those times he "breathed dust from the removal and replacement of asbestos-containing gaskets, packing, and insulation associated with the following machinery..."[8]  The Declaration then continues to list a variety of machinery allegedly manufactured by other Defendants and goes on to state, "gaskets and packing we used were Cranite, John Crane, and the original manufacturers of the equipment."[9]  This is the only time JCI is mentioned in the entire Declaration.  The Declaration provides broad testimonial evidence

---

[6] See Declaration of Daira Waldenberg.
[7] See *Declaration of Donald Varney* at Paragraph 1, attached as Exhibit 3 to Declaration of Daira Waldenberg.
[8] *Id.* at Paragraphs 3-4.
[9] *Id.* at Paragraph 4.

MOTION FOR SUMMARY JUDGMENT OF
DEFENDANT JOHN CRANE INC.
Case No.: 3:18-cv-05105-RJB - 4

SELMAN BREITMAN LLP
600 University Street, Suite 1800
Seattle, WA 98101-4129
T: 206.447.6461  F: 206.588.4185

43370.1 2909.43469

of Mr. Varney's alleged exposure, but fails to provide the foundational information required to show his disease was caused by exposure to asbestos containing products as it relates to JCI or any other Defendant for that matter.

## 2. Report of John C. Maddox

On or about December 26, 2018, Plaintiff's counsel produced a report from John C. Maddox, M.D.[10]  Dr. Maddox concluded Mr. Varney's mesothelioma was "caused by the cumulative effect of all of the asbestos exposures he received as a marine mechanic installing, removing, and manipulating asbestos-containing gaskets, packing, and thermal insulation."[11]  In creating his report and coming to his conclusion, Dr. Maddox reviewed four items:  (1) medical records of Donald Varney, (2) pathology materials of Donald Varney, (3) the Declaration (of Donald Varney) and (4) illustrations of mesothelioma, lung cancer, and asbestosis.[12]  Outside of the Declaration, there is no indication Dr. Maddox relied on any other evidence regarding Mr. Varney's alleged exposure to asbestos from JCI products.

## D. Deposition Testimony

### 1. Deposition of John R. Kercheval, D.O.

The deposition of John R. Kercheval, D.O. took place on December 5, 2018.[13]  He was the primary care physician in charge of Donald Varney from the time of his admission into Abrazo West Campus Hospital on January 26, 2018 up until his passing in the same hospital on

---

[10] See Declaration of Daira Waldenberg.

[11] See *Dr. Maddox's Report* at Page 65, attached as Exhibit 4 to Declaration of Daira Waldenberg.

[12] *Id.* at Page 21.

[13] See *Deposition Transcript of Dr. Kercheval* at Page 1, attached as Exhibit 5 to Declaration of Daira Waldenberg.

MOTION FOR SUMMARY JUDGMENT OF
DEFENDANT JOHN CRANE INC.
Case No.: 3:18-cv-05105-RJB - 5

SELMAN BREITMAN LLP
600 University Street, Suite 1800
Seattle, WA 98101-4129
T: 206.447.6461  F: 206.588.4185

43370.1 2909.43469

February 8, 2018.[14]  When Mr. Varney was initially admitted, the plan was to stabilize and

discharge him within three to four days.[15]  After more than four days had passed from Mr.

Varney's admission, Dr. Kercheval still believed he could be discharged and that death was not

imminent for Mr. Varney.[16]

> **Q:** At this point, on February 4th, was the goal, the plan still to get him to a state
> where he could be discharged from the hospital to another - - another place?
> **A:** That is always the - - the goal.  I had not - - from my note, I had not believed
> that his death was imminent, right then, which was the reason for getting
> palliative care.  So we discussed palliative because they're able to do much more
> with pain control as well as ease the symptoms associated with terminal care.

Dr. Kercheval went on to describe Mr. Varney's inability to cognitively contribute to

conversations on the following day, February 5, 2018.[17]

> **Q:** Okay.  And what was Mr. Varney's condition on the 5[th]?
> **A:** So initially, I have that he was having significantly increased fatigue and
> debility.  In my plan of care, I note that he had significantly declined since
> admission.  And I wrote that he had a very poor prognosis.  I had a discussion
> with the family at that time, and I made note that Mr. Varney was really unable to
> contribute anything to the discussion due to his condition.
> …
> **Q:** Okay.  You also mention that Mr. Varney was unable to contribute to the
> discussion about - - about his care.  Is that right?
> **…**
> **A:** That's a yes.
> **Q:** Okay.  And what was it about his condition that led you to believe that?
> **A:** He was - - he was more somnolent at that time and was weaker as far as
> following conversation.
> …
> **Q:** Okay.  When you say he's unable to contribute to the discussion of his
> condition, was this a discussion that you had with the family outside of his
> presence or was it with his presence but just, he wasn't cognitively able to
> understand and contribute?

---

[14] *Id*. at Pages 11:1-4 and 14:13-16.
[15] *Id*. at Pages 19:20-20:7.
[16] *Id*. at Pages 39:25-40:8.
[17] *Id*. at Pages 41:5-41:15, 42:10-19, and 43:8-18.

MOTION FOR SUMMARY JUDGMENT OF
DEFENDANT JOHN CRANE INC.
Case No.: 3:18-cv-05105-RJB - 6

SELMAN BREITMAN LLP
600 University Street, Suite 1800
Seattle, WA 98101-4129
T: 206.447.6461  F: 206.588.4185

43370.1 2909.43469

**A:** I believe from my note, it was that I was in the room seeing the patient at the time with family members present.
**Q:** He just wasn't cognitively able to contribute to that discussion?
**A:** Yes.

By the following day, February 6, 2018, Dr. Kercheval believed Mr. Varney would pass within three to five days based on his continued declining condition which included the inability to follow directions and reduced responsiveness to conversation.[18]  Dr. Kercheval then went on to describe Mr. Varney's condition the morning the Declaration was signed, February 7, 2018.[19]

**Q:** What was Mr. Varney's condition on the 7th?
**A:** He had actually - - at that point, I make a note that he is - - was essentially obtunded.  In other words, he was not responding to any verbal stimuli.
…
**Q:** What time of the day was it that you saw him?
**A:** It looks like I actually saw him at 11:30.
…
**Q:** When you say that he's being nonresponsive, what - - what, in your mind, does that mean in terms of his - - of his condition?
**A:** So at that point, for this patient, my feeling would be that he had - - was deteriorating to the point where he wasn't able to respond any longer.  It was not related to a treatment that was being done or he wasn't sedated for any particular thing.  So that was not the reason for it.
**Q:** When you say he's being nonresponsive, does that mean he doesn't recognize people who are in the room?
**A:** Typically, I would say that if I'm saying he's nonresponsive, that would be me going in to evaluate him and, as part of doing the physical, calling his name, getting him to respond, whether that be opening his eyes or answer or grasp my hand, any one of those.
**Q:** He wouldn't have been able to do those?
**A:** From my note, I would say no.

---

[18] *Id*. at Pages 47:24-48:9.
[19] *Id*. at Pages 49:6-9 and 50:19-51:11.

MOTION FOR SUMMARY JUDGMENT OF
DEFENDANT JOHN CRANE INC.
Case No.: 3:18-cv-05105-RJB - 7

SELMAN BREITMAN LLP
600 University Street, Suite 1800
Seattle, WA 98101-4129
T: 206.447.6461  F: 206.588.4185

43370.1 2909.43469

2. <u>Deposition of Maria Varney</u>

      *a.    Testimony Regarding Mr. Varney's Work History*

On February 6, 2019, the deposition of Plaintiff Maria Varney took place.[20]  She and Mr. Varney had been married since 1990.[21]  When questioned about Mr. Varney's work on the Navy shipyards, she was unable to identify, even to a remote degree of certainty, the type of work Mr. Varney was involved in.[22]

**Q:** Do you know any locations specifically where he worked on Navy ships?
**A:** No.
**Q:** Do you know specifically what years he would have worked on Navy Ships?
**A:** No.  He just told me when he was 18 or 19, when he was young and started working, but no.
**Q:** Do you know how long he worked on Navy ships when he was young?
**A:** No.
**Q:** Do you know the - - any of the manufacturers, or distributors, or suppliers of any of the equipment he worked with or around while he worked on ships in the Navy?
**A:** No.

Upon further questioning, she was unable to identify or provide any documentation or information related to Mr. Varney's work during his time in the Navy.[23]

**Q:** Do you have any documents, employment papers or any other written documents that would pertain to Mr. Varney's employment and work on Navy ships?
**A:** No.  Documents, I don't have any.
**Q:** Okay.
**A:** No, I don't.
**Q:** Do you know anybody that has information or knowledge about Mr. Varney's work on Navy ships?
**A:** No.

---

[20] See *Deposition Transcript of Maria Varney* at Page 1, attached as Exhibit 6 to Declaration of Daira Waldenberg.
[21] *Id.* at Page 9:4-6.
[22] *Id.* at Pages 32:22-33:10.
[23] *Id.* at Page 35:1-14.

MOTION FOR SUMMARY JUDGMENT OF
DEFENDANT JOHN CRANE INC.
Case No.: 3:18-cv-05105-RJB - 8

SELMAN BREITMAN LLP
600 University Street, Suite 1800
Seattle, WA 98101-4129
T: 206.447.6461  F: 206.588.4185

43370.1 2909.43469

She was also unable to remember or confirm a time when Mr. Varney ever mentioned the

words insulation, gasket, or packing.[24]

> **Q:** Did you ever hear him say the word "insulation"?
> **A:** Insulation? No.
> ...
> **Q:** Did you ever hear him say the word "gasket"?
> **A:** Gasket?
> **Q:** Gasket.
> **A:** No, I don't remember.
> **Q:** Did you ever hear him say the word "packing"?
> **A:** I don't remember.  No, I don't remember.

   b.   *Testimony Regarding Circumstances Surrounding the Signing of the Declaration*

According to Mrs. Varney, there were five people present when Mr. Varney signed the

Declaration: herself, Mr. Varney, a priest, Ben Adams (Mr. Varney's attorney) and a notary.[25]

She went on to describe the circumstances at time of the signing.[26]

> **Q:** Ms. Varney, we were talking about Exhibit 2, the [D]eclaration.  What I'm
> trying to find out is whether you have any knowledge about the process of how
> this document was created.
> **A:** No.
> **Q:** You indicated that you were present when your husband signed this document,
> correct?
> **A:** Yes.  When he signed this document there was a priest, there was a notary, my
> husband was awake, he was awake.  At that moment he was sitting, he wanted to
> sit down, he sat down, and I was surprised he wanted to sit down, and he sat
> down.  And he looked at me and he was awake.  He was awake.  He signed with
> his hand.  They put the paper, he signed well.  He was awake and he signed, and
> he signed.  He signed.
> **Q:** Do you recall what time of day it was on February 7th when you saw your
> husband sign this document?
> **A:** It was in the morning.  I don't remember the time, but it was before noon or at
> noon.

---

[24] *Id.* at Pages 88:22-89:6.
[25] *Id.* at Pages 60:10-61:1.
[26] *Id.* at Pages 67:16-68:5 and 68:20-69:10.

MOTION FOR SUMMARY JUDGMENT OF
DEFENDANT JOHN CRANE INC.
Case No.: 3:18-cv-05105-RJB - 9

SELMAN BREITMAN LLP
600 University Street, Suite 1800
Seattle, WA 98101-4129
T: 206.447.6461  F: 206.588.4185

43370.1 2909.43469

She went on to describe that no conversations were had during the signing of the

Declaration.[27]

> **Q:** Was there any conversation that happened during this time when the priest and the notary were present in the hospital room when your husband signed this declaration?
> **A:** No, everyone was quiet.  The priest was to his side, the notary was in front watching.  I was next to my husband, the lawyer was here, we were just looking at him.  I was the one that was next to him, but we were just there watching.  The notary was watching everything.  But no one talked.  He just looked at me when they gave him the paper and he held the paper and then he signed.  He signed and he laid backwards.
> **Q:** Who handed Exhibit 2 to your husband to sign?
> **A:** The notary was there.  It was the attorney, but the notary was in front.  The notary approached and saw, and then they moved to the side.
> **Q:** Did the notary talk at all when he was there in the hospital room?
> **A:** No.  The notary was just watching everything.  Watching.  He had his book.
> **Q:** Did the notary ask - -
> **A:** He didn't talk to me.  He got there said hi, and he was watching everything.
> **Q:** Did the notary ask your husband any questions?
> **A:** No.

She further testified the last time she spoke with Mr. Varney was three or four days

before his passing.[28]

> **Q:** Ms. Varney, do you remember the last thing that your husband said?
> **A:** Well, when we talked I was telling him that I loved him.  The last thing he said to me was, "Gloria, I love you."  That was it.  And then after that we didn't talk.  He said that to me.
> **Q:** Do you remember what day that he said that he loved you?
> **A:** Before he died, about three days I think.  Three or four days before, yes.

## III.   **EVIDENCE RELIED UPON**

1.   Declaration of Daira Waldenberg with exhibits attached thereto.

2.   Records, pleadings, and documents on file,

---

[27] *Id*. at Pages 74:22-75:20.
[28] *Id*. at Pages 85:5-14.

MOTION FOR SUMMARY JUDGMENT OF
DEFENDANT JOHN CRANE INC.
Case No.: 3:18-cv-05105-RJB - 10

SELMAN BREITMAN LLP
600 University Street, Suite 1800
Seattle, WA 98101-4129
T: 206.447.6461  F: 206.588.4185

43370.1 2909.43469

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

## IV.   ISSUES PRESENTED

1.   Should summary judgment be granted when Plaintiffs have failed to put forth any admissible evidence Mr. Varney's claimed asbestos related injuries were caused by the actions or products of JCI.

2.   Should summary judgment be granted when the evidence put forth by Plaintiffs, if deemed admissible by the Court, is insufficient to support any claim or theory of liability against JCI.

## V.   AUTHORITY AND ARGUMENT

Summary judgment is proper when the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits or declarations, demonstrate that there is no genuine issue as to any material fact. CR 56(c); *Central Washington Bank v. Mendeson-Zeller*, 113 Wn.2d 346, 351, 770 P.2d 697 (1989); *Cameron v. Downs*, 32 Wn. App. 875, 877, 650 P.2d 260 (1982).  A material fact is one that affects the outcome of the litigation. *Ruff v. County of King*, 125 Wn.2d 697,703, 887 P.2d 886 (1995).  When reasonable minds could reach but one conclusion, questions of fact may be determined as a matter of law. *Id.* at 704, citing *Hartley v. State*, 103 Wn.2d 768, 774, 698 P.2d 77 (1985).

A party cannot rely solely on the allegations in his or her pleadings, on speculation, or on argumentative assertions that unresolved factual issues remain. *White v. State*, 131 Wn.2d 1, 9, 929 P.2d 396 (1997); *Baldwin v. Sisters of Providence in Wash., Inc.*, 112 Wn.2d 127, 132, 769 P.2d 298 (1989).  After the moving party submits adequate affidavits, the nonmoving party must set forth specific facts which sufficiently rebut the moving party's contentions and disclose the existence of a genuine issue as to a material fact. *Meyer v. University of Wash.*, 105 Wn.2d 847, 852, 719 P.2d 98 (1986).  When reasonable minds could reach but one conclusion from the admissible facts in evidence, summary judgment should granted. *LaMon v. Butler*, 112 Wn.2d 193, 199, 770 P.2d 1027, *cert denied*, 493, U.S. 814 (1989).

---

MOTION FOR SUMMARY JUDGMENT OF
DEFENDANT JOHN CRANE INC.
Case No.: 3:18-cv-05105-RJB - 11

SELMAN BREITMAN LLP
600 University Street, Suite 1800
Seattle, WA 98101-4129
T: 206.447.6461  F: 206.588.4185

In responding to a summary judgment motion, the nonmoving party has the burden to prove the essential elements of their case as they would at trial. *Young v. Key Pharmaceuticals*, 112 Wn.2d 216, 225, 770 P.2d 182 (1989).  If the nonmoving party fails to make such a showing, summary judgment is appropriate. *Id*.  The court should apply the same substantive standard of proof as will be applicable at trial. *Baldwin v. Sisters of Providence*, 112 Wn.2d 127, 132, 769 P.2d 298 (1989).  Mere allegations, conclusory assertions and assumptions are insufficient to defeat a summary judgment motion. *Id*.  A court may not consider inadmissible evidence when ruling on a motion for summary judgment. *Allen v. Asbestos Corp. Ltd*, 138 Wn. App. 564, 570, 157 P.3d 406 (2007), citing *Int'l Ultimate, Inc. v. St. Paul Fire & Marine Ins. CO.*, 122 Wn. App. 736, 744, 87 P.3d 774 (2004).

**A.  Plaintiffs Have Failed to Produce Any Admissible Evidence in Support of Their Claims Against JCI**

Plaintiffs have produced only two documents in discovery they believe link JCI to Plaintiffs' claims: (A) the Declaration (of Donald Varney) and (B) Report of John C. Maddox. Neither document is admissible evidence.  Therefore, JCI's Motion for Summary Judgment must be granted.

1.  The Declaration is Inadmissible Hearsay

Defendant anticipates Plaintiffs will argue the Declaration is admissible as an exception to the hearsay rule under FRE 804(b)(2) (as a "dying declaration") or FRE 807 (the residual exception).

a.  *The Declaration is Inadmissible under FRE 804(b)(2)*

FRE 804(b)(2) states the following is not excluded by the rule against hearsay if the declarant is unavailable as a witness:

---

MOTION FOR SUMMARY JUDGMENT OF
DEFENDANT JOHN CRANE INC.
Case No.: 3:18-cv-05105-RJB - 12

SELMAN BREITMAN LLP
600 University Street, Suite 1800
Seattle, WA 98101-4129
T: 206.447.6461  F: 206.588.4185

43370.1 2909.43469

**Statement Under the Belief of Imminent Death.** In a prosecution for homicide or in a civil case, a statement that the declarant, while believing the declarant's death to be imminent, made about its cause or circumstances.

This hearsay exception applies only if the declarant believed, when making the statement in question, that his death was "imminent." FRE 804(b)(2). The question of whether a declaration was made under belief of imminent death is a preliminary fact question for the judge. FRE 104.

The time between the declaration and subsequent death is a pertinent factor in determining what the declarant likely believed. The United States Supreme Court has further emphasized that the declarant must have made the declaration while believing death would occur almost immediately and not just as the ultimate result of an illness. In *Shepard v. United States*, the Supreme Court explained the parameters of the dying declaration exception to the hearsay rule:

> To make out a dying declaration, the declarant must have spoken without hope of recovery and in the shadow of impending death.... Fear or even belief that illness will end in death will not avail of itself to make a dying declaration. There must be a settled hopeless expectation that death is near at hand, and what is said must have been spoken in the hush of its impending presence. Despair of recovery may indeed be gathered from the circumstances if the facts support the inference. There is no unyielding ritual of words to be spoken by the dying. Despair may even be gathered, though the period of survival outruns the bounds of expectation. What is decisive is the state of mind. Even so, the state of mind must be exhibited in the evidence, and not left to conjecture. The patient must have spoken with the consciousness of a swift and certain doom.

290 U.S. 96, 99-100, 54 S.Ct. 22 (1933). Courts have ruled that statements by declarants with a terminal illness are not dying declarations unless the declarants believed that imminent death was at hand. *Sternhagen v. Dow Co.*, 108 F.Supp.2d 1113, 1117-18 (D. Mont. 1999).

First, in the present case, the Declaration is not a "statement" as required by the rule. It is a prepared, typed up document created in anticipation of litigation and signed by the declarant.

MOTION FOR SUMMARY JUDGMENT OF
DEFENDANT JOHN CRANE INC.
Case No.: 3:18-cv-05105-RJB - 13

SELMAN BREITMAN LLP
600 University Street, Suite 1800
Seattle, WA 98101-4129
T: 206.447.6461  F: 206.588.4185

43370.1 2909.43469

This is clearly evident by the first paragraph of the Declaration, which in essence is a regurgitation of this hearsay exception rule.  While the exact circumstances of the who, when, and where the Declaration was created remains uncertain, it is clear, on its face, the language and form of the Declaration reflects individual(s) with legal experience and knowledge drafted the document for purposes of litigation.

Second, even if this Declaration is considered to be a "statement," there is no evidence to show the "statement" was made was under the belief death was "imminent."  Ironically, the inclusion of the first paragraph in the Declaration would support the notion death was not imminent as no person would waste their presumable final breaths to regurgitate the words of the evidence rules in hopes of preserving such words for future litigation.  In addition, Mrs. Varney testified the last time she heard her husband speak was three or four days prior to his death.  On February 4, 2018, four days before Mr. Varney's passing, Dr. Kercheval testified he did not believe Mr. Varney's death was imminent at that point.  Dr. Kercheval further testified Mr. Varney was unable to cognitively contribute to any discussions beginning February 5, 2018. Per Mrs. Varney's testimony, Mr. Varney, nor anyone else in the room for that matter, said a single word at the time of the signing of the Declaration.  All this goes to show that even if the Court was to believe the contents of the Declaration were the statements of Mr. Varney, at best, Mr. Varney would have spoken such words three to four days prior to his actual death at a time when his death was clearly not imminent.

Based on the foregoing, the Declaration must be deemed inadmissible and without such evidence, Plaintiffs' claims against JCI cannot survive summary judgment.

MOTION FOR SUMMARY JUDGMENT OF
DEFENDANT JOHN CRANE INC.
Case No.: 3:18-cv-05105-RJB - 14

SELMAN BREITMAN LLP
600 University Street, Suite 1800
Seattle, WA 98101-4129
T: 206.447.6461  F: 206.588.4185

43370.1 2909.43469

1

*b. The Declaration is Inadmissible under FRE 807*

2

FRE 807 allows for the admissibility of an otherwise hearsay statement if (1) the

3

statement has equivalent circumstantial guarantees of trustworthiness; (2) it is offered as

4

evidence of a material fact; (3) it is more probative on the point for which it is offered than any

5

other evidence that the proponent can obtain through reasonable efforts; and (4) admitting it will

6

best serve the purposes of these rules and the interests of justice. FRE 807(a). The Court in

7

*Sternhagen* stated, "The most important requirement of the residual exception is that the hearsay

8

evidence have 'circumstantial guarantees of trustworthiness' that are 'equivalent' to those of the

9

exceptions enumerated in FRE 803 and 804." 108 F.Supp.2d at 1119 citing *Fong v. American*

10

*Airlines*, *Inc.* 626 F.2d 759, 763 (9th Cir. 1980). The Court then went on to outline a number of

11

factors to consider in evaluating hearsay evidence's trustworthiness such as (1) whether the

12

declarant was under oath; (2) made the statement voluntarily; (3) based the statement on personal

13

knowledge; (4) contradicted any previous statement; (5) had the statement preserved on

14

videotape to afford the jury an opportunity to evaluate declarant's demeanor; (6) availability of

15

the declarant to be cross-examined; (7) statement's proximity in time to the events it describes;

16

(8) whether the statement has been corroborated; (9) motivation to fabricate; (10) whether the

17

statement was prepared in anticipation of litigation; (11) the statement's spontaneity; (12) and

18

whether the declarant's perception or memory was faulty. *Id.*

19

In applying these factors to the present case, the Declaration fails to have the

20

"circumstantial guarantees of trustworthiness" as required by this rule. At the forefront is Mr.

21

Varney's mental and cognitive ability to perceive the Declaration he signed. Mrs. Varney

22

testified the Declaration was signed on the morning of February 7, 2018 around noon or

23

24

25

26

MOTION FOR SUMMARY JUDGMENT OF
DEFENDANT JOHN CRANE INC.
Case No.: 3:18-cv-05105-RJB - 15

SELMAN BREITMAN LLP
600 University Street, Suite 1800
Seattle, WA 98101-4129
T: 206.447.6461  F: 206.588.4185

43370.1 2909.43469

sometime before.  On the same day, at 11:30 a.m., Dr. Kercheval examined Mr. Varney and described him to be "obtunded" and "non-responsive."  In other words, he could not respond to any verbal stimuli or to the most basic of commands.  Given his mental and physical state at the time he signed the Declaration, Mr. Varney's perception and memory regarding events from over 50 years ago are called into serious question.

In addition, the Declaration was clearly a document prepared in anticipation of litigation. There were no words spoken during the time Mr. Varney was signing the document.  There was no verification, even from the notary, as to Mr. Varney's mental state or ability to even comprehend what it was he was signing.  The Plaintiff has also failed to provide any other evidence to corroborate the contents of the Declaration; even Mrs. Varney was unable to produce any information or identify persons with information as it related to Mr. Varney's claims. Overall, when the factors as listed by the *Sternhagen* Court are applied to the facts surrounding the Declaration in this case, it is clear the Declaration does not meet the requirements to be admissible under FRE 807.

2.   <u>The Report of John C. Maddox Cannot be Used to Circumvent the Inadmissibility of the Declaration.</u>

Defendant anticipates Plaintiffs will argue Dr. Maddox's report is evidence sufficient to survive this summary judgment motion under FRE 703.  FRE 703 reads in relevant part:

> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed.  If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted.  But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs the prejudicial effect.

MOTION FOR SUMMARY JUDGMENT OF
DEFENDANT JOHN CRANE INC.
Case No.: 3:18-cv-05105-RJB - 16

SELMAN BREITMAN LLP
600 University Street, Suite 1800
Seattle, WA 98101-4129
T: 206.447.6461  F: 206.588.4185

Although FRE 703 allows experts to base their opinion testimony on facts or data that is not admissible in evidence, the otherwise inadmissible underlying facts or data is not substantive evidence. *Allen*, 138 Wn. App. at 579 citing *In re Det. Of Marshall* at 122 Wn. App. 132, 146, 90 P.3d 1081 (2004), *aff'd*, 156 Wn.2d 150, 125 P.3d 111 (2005).  A trial court may allow the admission of otherwise hearsay evidence and inadmissible facts for the purpose of showing the basis of the expert's opinion, but the admission of such facts is not proof of them. *Id.*  This was further cemented by the 9th Circuit Court of Appeals in *Turner v. Burlington Northern Santa Fe. R. Co.* 338 F.3d 1058, 1060 (9th Cir. 2003).

The Plaintiffs in *Turner* brought suit against Burlington Northern Santa Fe. R. Co. (BNSF) for damages allegedly caused by a BNSF railroad car fire. *Id.*  An expert hired by BNSF took a sample of the debris pile and sent it to a lab for analysis, which came back showing a mixture consistent with gasoline. *Id.*  The trial court excluded the expert's testimony because the expert relied on the lab report as substantive evidence the fire was started by gasoline. *Id.* at 1060-1061.  On appeal, the 9th Circuit Court stated, "the presumptive evidence that otherwise is inadmissible will be kept out unless the court determines that any potential prejudice is *substantially outweighed* by the probative value." *Id.* at 1062.  The Court went on to point out the lab report was the only evidence of gasoline in the soil and so the expert's reliance on the lab report was not used as data upon which experts in his field reasonably relied upon, but that it was used as substantive evidence in supporting his conclusion the fire was intentionally created. *Id.* As such, the Court upheld the trial court's ruling in excluding the expert's testimony as the prejudice that would result from admission would be substantial whereas the probative value would be minimal. *Id.*

MOTION FOR SUMMARY JUDGMENT OF
DEFENDANT JOHN CRANE INC.
Case No.: 3:18-cv-05105-RJB - 17

SELMAN BREITMAN LLP
600 University Street, Suite 1800
Seattle, WA 98101-4129
T: 206.447.6461  F: 206.588.4185

43370.1 2909.43469

The Declaration of Mr. Varney is analogous to the lab report in *Turner* as it is the only piece of evidence which allegedly links JCI to the Plaintiffs' claims. Just like the expert's reliance on the lab report in *Turner,* Dr. Maddox's reliance on the Declaration is not facts or data in which experts in Dr. Maddox's field would reasonably rely upon, but instead, it was used as substantive evidence in support of his ultimate conclusion. As such, the prejudice to JCI that would arise from the admission of this report would be substantial whereas the probative value would be minimal. Therefore, Dr. Maddox's report must be deemed inadmissible.

**B. Even if the Court Finds the Declaration Admissible, it is Insufficient Evidence for a Reasonable Jury to Conclude JCI Caused Mr. Varney's Alleged Disease.**

In asbestos cases, causation may be established through direct or circumstantial evidence. *Allen*, 138 Wn. App. at 571. The Washington Supreme Court, in *Lockwood v. AC & S, Inc.,* 109 Wn.2d 235, 744 P.2d 605 (1987) established a multi-factor test to examine whether sufficient evidence of causation exists in asbestos litigation. This test includes looking at the Plaintiff's proximity to the asbestos product when the exposure occurred; the extent of time Plaintiff was exposed to the product; and expert testimony on the effects of inhalation of asbestos on human health in general and the Plaintiff in particular. *Id.* at 248-49; 16 DeWolf, Washington Practice §5:12 (4th ed. 2016).

Under *Lockwood*, a Plaintiff must establish that "the Defendant's product was among other sources of exposure in the Plaintiff's environment that cumulatively caused the disease." *Headley v. Ferro Corp.*, 630 F.Supp.2d 1261, 1268 (W.D. Wash. 2008), citing *Lockwood*, 109 Wn.2d at 245-47. However, "the sufficiency of the evidence of causation will depend on the unique circumstances of each case." *Lockwood*, 109 Wn.2d at 249. Here, Plaintiffs fail to

---

MOTION FOR SUMMARY JUDGMENT OF
DEFENDANT JOHN CRANE INC.
Case No.: 3:18-cv-05105-RJB - 18

SELMAN BREITMAN LLP
600 University Street, Suite 1800
Seattle, WA 98101-4129
T: 206.447.6461  F: 206.588.4185

43370.1 2909.43469

present sufficient evidence that JCI's products released any asbestos fibers, let alone a sufficient amount to "cumulatively cause" Mr. Varney's disease.

Proximate cause is comprised of cause in fact and legal causation. 16 DeWolf, Washington Practice §5:1 (4th ed. 2016). In the context of asbestos litigation, cause in fact is proven by the "substantial factor" test, such that if there are multiple causes combined to produce a single result, and each is a substantial factor in bringing about that harm and each is charged with responsibility for the harm. *Lockwood,* 109 Wn.2d at 245. Legal causation focuses on legal responsibility; the question is "whether, as a matter of policy, the connection between the ultimate result and the act of the Defendant is too remote or insubstantial to impose liability." *Schooley v. Pinch's Deli Market, Inc.*, 134 Wn.2d 468, 478-79, 951 P.2d 749 (1998). Both cause in fact and legal causation must be proven to sustain a cause of action. 16 DeWolf, Washington Practice §5:1 (4th ed. 2016).

In the present case, the Plaintiffs have failed to put forth sufficient evidence for a reasonable jury to conclude Mr. Varney's alleged mesothelioma was caused by the actions or products of JCI. The Declaration of Mr. Varney is a document created for the purposes of litigation, which makes the most generic of allegations against all Defendants in the subject lawsuit. The Declaration merely mentions John Crane once in that the "gaskets and packing we used were Cranite, John Crane, and the original manufacturers of the equipment."

There is no foundation for the characterization of JCI gaskets and packing as "asbestos containing." There is no information on the extent of time Plaintiff was exposed to any JCI products, no information on specific JCI products the Plaintiff was allegedly exposed to, no information on the Plaintiff's proximity to JCI products and no information on specifically when

---

MOTION FOR SUMMARY JUDGMENT OF
DEFENDANT JOHN CRANE INC.
Case No.: 3:18-cv-05105-RJB - 19

SELMAN BREITMAN LLP
600 University Street, Suite 1800
Seattle, WA 98101-4129
T: 206.447.6461  F: 206.588.4185

43370.1 2909.43469

the exposure to JCI products occurred.   In addition, the decedent's surviving spouse, plaintiff

Maria Varney, was unable to provide any information regarding the claims against JCI.

The only other evidence put forth by Plaintiffs is the report by Dr. Maddox.  However, it

is clear the only piece of evidence he relied on in terms of alleged facts to support the Plaintiffs'

claims was Mr. Varney's Declaration.  Therefore, his conclusions, for purposes of this motion,

carry no value as he relied on no additional information with regards to Mr. Varney's alleged

asbestos exposure from JCI products other than what was in the Declaration.

The entirety of Plaintiffs' case, in essence, relies on the February 7, 2018 Declaration of

Mr. Varney.  However, the Declaration, at its core, is a document generated for purposes of

litigation which contains a generic allegation against a number of Defendants, one of whom who

happens to be JCI.  Even if the Court decided the Declaration and Dr. Maddox's report are

admissible, they do not support a reasonable inference that the JCI products Mr. Varney

supposedly worked with contained asbestos or that he worked with them with sufficient

frequency to rise to the level of "substantial factor."  Ultimately, there is insufficient evidence for

a reasonable jury to conclude JCI's actions or product caused Mr. Varney's alleged exposure to

asbestos and mesothelioma.  Therefore, Plaintiffs' claims against JCI must be dismissed as a

matter of law.

## VI.   <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs' claims against JCI must be dismissed as a matter of

law.  JCI respectfully requests the Court grant its motion for summary judgment and that all

claims against it be dismissed with prejudice.

MOTION FOR SUMMARY JUDGMENT OF
DEFENDANT JOHN CRANE INC.
Case No.: 3:18-cv-05105-RJB - 20

SELMAN BREITMAN LLP
600 University Street, Suite 1800
Seattle, WA 98101-4129
T: 206.447.6461  F: 206.588.4185

43370.1 2909.43469

1

DATED:  February 28, 2019

2

By: /s/ *Daira Waldenberg*

Daira Waldenberg, WSBA #27469

3

SELMAN BREITMAN LLP
600 University Street, Suite 1800

4

Seattle, WA 98101-4129
Telephone: 206.447.6461

5

Facsimile: 206.588.4185
dwaldenberg@selmanlaw.com

6

7

Carrie S. Lin (admitted *pro hac vice*)
clin@mgmlaw.com

8

MANNING GROSS & MASSENBURG, LLP
201 Spear Street – 18th Floor

9

San Francisco, CA  94105
Telephone:  415.527.2802

10

Facsimile:  415.512.6791

11

*Attorneys for Defendant John Crane, Inc.*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

---

MOTION FOR SUMMARY JUDGMENT OF
DEFENDANT JOHN CRANE INC.
Case No.: 3:18-cv-05105-RJB - 21

SELMAN BREITMAN LLP
600 University Street, Suite 1800
Seattle, WA 98101-4129
T: 206.447.6461  F: 206.588.4185

1

## **CERTIFICATE OF SERVICE**

2      I hereby certify that on February 28, 2019, I electronically filed the foregoing with the

3 Clerk of the Court using the CM/ECF system, which will send notification of the filing to all

4 counsel of record who receive CM/ECF notification.

5

6

7                                    /s/ *Gabrielle J. Witherspoon*
                                     Gabrielle J. Witherspoon,
8                                    Legal Assistant
                                     gwitherspoon@selmanlaw.com
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

MOTION FOR SUMMARY JUDGMENT OF                         SELMAN BREITMAN LLP
DEFENDANT JOHN CRANE INC.                       600 University Street, Suite 1800
Case No.: 3:18-cv-05105-RJB - 22                      Seattle, WA 98101-4129
                                                T: 206.447.6461  F: 206.588.4185

43370.1 2909.43469