# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT TACOMA

| | |
|---|---|
| MARIA VARNEY, Individually and as Personal Representative for the Estate of DONALD VARNEY,<br><br>      Plaintiff,<br> v.<br><br>AIR & LIQUID SYSTEMS CORPORATION; et al.,<br><br>      Defendants. | CASE NO. C18-5105 RJB<br><br>ORDER ON DEFENDANT ARMSTRONG INTERNATIONAL, INC.'S MOTION FOR SUMMARY JUDGMENT AND MOTION TO EXCLUDE INADMISSIBLE EVIDENCE |

This matter comes before the Court on Defendant Armstrong International, Inc.'s ("Armstrong") Motion for Summary Judgment (Dkt. 398) and Armstrong's Motion to Exclude Inadmissible Evidence (Dkt. 426). The Court is familiar with the records and files herein and all documents filed in support of and in opposition to the motions. Oral argument is unnecessary.

For the reasons stated below, Armstrong's Motion for Summary Judgment (Dkt. 398) should be denied. Armstrong's Motion to Exclude Inadmissible Evidence (Dkt. 426) should be denied as to Exhibit 10, and denied as moot as to Exhibits 9 and 30.

ORDER ON DEFENDANT ARMSTRONG INTERNATIONAL, INC.'S MOTION FOR SUMMARY JUDGMENT AND MOTION TO EXCLUDE INADMISSIBLE EVIDENCE - 1

## I. BACKGROUND

The above-entitled action was commenced in Pierce County Superior Court on February 2, 2018. Dkt. 1, at 2. Notice of removal from the state court was filed with this Court on February 12, 2018. Dkt. 1.

In the operative complaint, Plaintiff alleges that Donald Varney ("Mr. Varney"), now deceased, was exposed to asbestos while working as a marine machinist at the Puget Sound Naval Shipyard and Hunter's Point Naval Shipyard, and through personal automotive exposure and from his father's automotive exposure. Dkt. 342, at 5. "Plaintiffs claim liability based upon the theories of product liability, including but not limited to negligence, strict product liability …, conspiracy, premises liability, the former RCW 49.16.030, and any other applicable theory of liability, including, if applicable, RCW 7.72 et seq." Dkt. 342, at 5; *see generally* § II(F), *infra*.

Plaintiff's interrogatory responses include the following:

Asbestos Exposure/Jobsites

[INTERROGATORY] 11.
Identify each job site or ship (referencing its specific location and the dates of your employment) at which you claim exposure to asbestos-containing products and your occupation or trade at each job site.

ANSWER:
I believe my attorneys have information suggesting that I was exposed to the defendants' asbestos products during my time working as a marine machinist at Puget Sound Naval Shipyard from 1957 to 1962 and from 1968 to 1972, as well as during my time as a marine machinist at Hunter's Point Naval Shipyard from approximately 1965 to 1968. The ships I recall performing work on are below, although I know there were many more:

USS Bon Homme Richard (CV-31);
USS Coontz (DLG-9);
USS Coral Sea (CV-43);
USS Iwo Jima (LPH-2);
USS King (DLG-10);

|   |   |
|---|---|
| 1 | USS Mansfield (DD-728); |
|   | USS Menhaden (SS-377); |
| 2 | USS Midway (CV-41); |
|   | USS Pomfret (SS-391); |
| 3 | USS Ranger (CVA-61); |
|   | USS Roosevelt (CV/CVA/CVB-42); |
| 4 | USS Shangri-La (CV-38). |

Dkt. 398, at 3.

Plaintiff's interrogatory responses continue (switching to a third-person narrative), "[Mr. Varney] was exposed to asbestos-containing materials associated with … steam traps manufactured by Armstrong." Dkt. 398, at 4.

Mr. Varney passed away from mesothelioma on February 8, 2018 (Dkt. 220-1), before being deposed. Dkt. 245-2. On February 7, 2018, one day before his passing, Mr. Varney apparently signed an affidavit purportedly identifying several asbestos-containing materials that he worked with and that were manufactured by various defendants, including "[s]team traps manufactured by Armstrong". Dkts. 278-1, at 3; and 342.

Dr. John Maddox, Plaintiff's causation expert in this matter, reviewed Mr. Varney's medical records and his aforementioned affidavit. Dkt. 309, at 4. Dr. Maddox, relying, in part, on Mr. Varney's affidavit, opined that Mr. Varney's "lethal malignant pleural mesothelioma was caused by his cumulative asbestos exposures to a variety of component exposures." Dkt. 313-11, at 4.

Numerous defendants, including Armstrong, in their respective motions for summary judgment and in additional briefs, raised issues regarding the admissibility of Mr. Varney's affidavit and Dr. Maddox's opinion. *See, e.g.,* Dkts. 217; 219; 237; 257; 273; 281; 285; 363; 372; 378; 380; 382; and 384. They argued that the affidavit, and Dr. Maddox's opinion relying thereon, were inadmissible as evidence. *See, e.g.,* Dkt. 273.

The Court invited additional briefing regarding the admissibility of Mr. Varney's affidavit and Dr. Maddox's opinion. Dkt. 255. Upon review of the additional briefing, the Court ordered that an evidentiary hearing be held to determine the admissibility of the affidavit and opinion. Dkt. 300. After a mini-trial lasting more than two days, the Court held that the affidavit and opinion are inadmissible as evidence in regard to summary judgment motions and at trial. Dkt. 361, at 1.

In the instant motion for summary judgment, Armstrong argues for dismissal with prejudice pursuant to Fed. R. Civ. P. 56. Dkt. 398. Armstrong contends that "[t]here is no admissible evidence that Mr. Varney was ever exposed to an asbestos-containing product made, sold or supplied by Armstrong International, or for which Armstrong International is liable." Dkt. 398, at 2. Armstrong continues, "Moreover, there is no admissible evidence that Mr. Varney was ever exposed to asbestos fibers associated with any Armstrong International product in sufficient quantity to be a *substantial factor* in causation of his disease, as required by Washington law." Dkt. 398, at 2 (emphasis in original).

Plaintiff filed a response in opposition to Armstrong's instant motion for summary judgment. Dkt. 422. Unlike Plaintiff's previous responses in opposition to other defendants' motions for summary judgment and dismissal (e.g., Dkt. 408, filed on May 13, 2019), Plaintiff offers as evidence the Declaration of Ralph Sanders ("Sanders Declaration") (Dkt. 423-10), dated May 14, 2019, and filed May 28, 2019. Dkt. 422, at 4.

The Sanders Declaration provides, in part, that Ralph Sanders ("Mr. Sanders") was a Marine Machinist apprentice at the Puget Sound Naval Shipyard (PSNS) in Bremerton, Washington, from 1957–1961. Dkt. 423-10, at 2. Mr. Sanders provides that he was in the same apprenticeship class at PSNS as Mr. Varney, where he recalls working onboard the USS Midway

and USS Coral Sea. Dkt. 423-10, at 3. Mr. Sanders recalls that the work was dusty, that he breathed dust from his work, and that he worked with "[s]team traps manufactured by Armstrong" at PSNS. Dkt. 423-10, at 3–4. Mr. Sanders states:

> 7. While working onboard vessels, the machinists and apprentices worked in close confined spaces with other trades, including insulators, who were installing asbestos insulation on steam piping and equipment. At times we used a knife or hammer to remove asbestos insulation from equipment and to facilitate repair work. Removing insulation from equipment was very dusty.
>
> 8. I never saw a warning about asbestos or cancer on any product I worked on at the Puget Sound ?Naval Shipyard during my apprenticeship from 1957 to 1961.
>
> 9. I never wore a dust mask or respirator while working as a machinist at Puget Sound Naval Shipyared during my apprenticeship from 1957 to 1961.

Dkt. 423-10, at 4.

Plaintiff also provides deposition testimony about the sale of asbestos-containing products from Rex Scare ("Mr. Scare"), an Armstrong corporate representative. Dkt. 422, at 4–5. Mr. Scare stated that Armstrong stopped selling asbestos-containing replacement gaskets for its steam traps in 1988, but asbestos-containing steam traps could have remained in the market until 2003. Dkt. 422, at 5. Plaintiff offered historical evidence that Armstrong products contained asbestos and that Armstrong knew maintenance would have to be performed on its steam traps, which would require the removal and replacement of internal asbestos gaskets. Dkt. 422, at 6.

Armstrong filed a reply in support of its motion for summary judgment. Dkt. 426. Armstrong argues that "Plaintiff … has failed to offer any admissible evidence demonstrating that any product manufactured, sold or supplied by Armstrong International caused or contributed to Mr. Varney's mesothelioma." Dkt. 426, at 2. Additionally, Armstrong moves to exclude three exhibits that Plaintiff filed in opposition to the instant motion for summary

1 judgment: Exhibit 9, the Declaration of Donald Varney; Exhibit 10, the Sanders Declaration; and Exhibit 30, the Report of Dr. John Maddox. Dkt. 426, at 2–3.

Below, first, in § II(A), the Court discusses Plaintiff's Motion for Reconsideration. Next, in §§ II(B)–(D), the Court discusses Armstrong's Motion for Summary Judgment. Then, in §II(E), the Court discusses Armstrong's Motion to Exclude Inadmissible Evidence. Finally, in §II(F), the Court briefly discusses Plaintiff's other possible claims.

## II. DISCUSSION

### A. MOTION FOR RECONSIDERATION

Despite the Court's April 17, 2019 ruling excluding this evidence, Plaintiff apparently still seeks to use Mr. Varney's affidavit and Dr. Maddox's report. *See* Dkt. 422, at 2. Plaintiff states that it "refers to these documents not only in the hope that this Court will reconsider its decision to exclude these documents, but also to ensure that the record is complete for appellate purposes, should an appeal be necessary." Dkt. 422, at 2.

To the extent that Plaintiff moves for reconsideration of the April 17, 2019 order excluding Mr. Varney's affidavit and Dr. Maddox's report, the motion should be denied. Aside from being untimely, (under W.D. Wash. Local Rule 7(h)(2) motions for reconsideration are to be filed within 14 days after the order to which they relate, and this motion was filed on May 28, 2019—27 days too late), pursuant to Local Rule 7(h)(1), "motions for reconsideration are disfavored. The court will ordinary deny such motions in the absence of a showing of manifest error in the prior ruling or a showing of new facts or legal authority which could not have been brought to its attention earlier."

Plaintiff fails to make such a showing. Plaintiff does not point to "a manifest error in the prior ruling" or "new facts or legal authority which could not have been brought to [the court's]

1 attention earlier." W.D. Wash. Local Rule 7(h)(1). Mr. Varney's affidavit and Dr. Maddox's opinion are inadmissible as evidence in regard to summary judgment and at trial. Dkt. 361; *see generally* § II(E)(1), *infra*.

**B. SUMMARY JUDGMENT STANDARD**

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). *See also* Fed. R. Civ. P. 56(d). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors Association*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254, *T.W. Elect. Service Inc.*, 809 F.2d at 630. The court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts

specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson, supra*). Conclusory, non-specific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888–89 (1990).

## C. WASHINGTON STATE SUBSTANTIVE LAW APPLIES

Under the rule of *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938), federal courts sitting in diversity jurisdiction apply state substantive law and federal procedural law. *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 427 (1996).

## D. SUMMARY JUDGMENT ANALYSIS

### 1. Washington Products Liability Standard

"Generally, under traditional product liability theory, the plaintiff must establish a reasonable connection between the injury, the product causing the injury, and the manufacturer of that product. In order to have a cause of action, the plaintiff must identify the particular manufacturer of the product that caused the injury." *Lockwood v. AC & S, Inc.,* 109 Wn.2d 235, 245–47 (1987) (quoting *Martin v. Abbott Laboratories,* 102 Wn.2d 581, 590 (1984)).

> Because of the long latency period of asbestosis, the plaintiff's ability to recall specific brands by the time he brings an action will be seriously impaired. A plaintiff who did not work directly with the asbestos products would have further difficulties in personally identifying the manufacturers of such products. The problems of identification are even greater when the plaintiff has been exposed at more than one job site and to more than one manufacturer's product. [] Hence, instead of personally identifying the manufacturers of asbestos products to which he was exposed, a plaintiff may rely on the testimony of witnesses who identify manufacturers of asbestos products which were then present at his workplace.

*Id.* at 246–47 (citations omitted).

*Lockwood* prescribes several factors for courts to consider when "determining if there is sufficient evidence for a jury to find that causation has been established":

1. Plaintiff's proximity to an asbestos product when the exposure occurred;
2. The expanse of the work site where asbestos fibers were released;
3. The extent of time plaintiff was exposed to the product;
4. The types of asbestos products to which plaintiff was exposed;
5. The ways in which such products were handled and used;
6. The tendency of such products to release asbestos fibers into the air depending on their form and the methods in which they were handled; and
7. Other potential sources of the plaintiff's injury.

*Id.* at 248–49.

### 2. Washington Products Liability Analysis

Viewing the evidence presented in this case in the light most favorable to Plaintiff, the Court concludes that it would be reasonable for a factfinder to infer that Mr. Varney was exposed to an Armstrong asbestos-containing product, and that it caused Mr. Varney's mesothelioma and death. *See id.* at 245–49. Plaintiff's evidence demonstrates that genuine issues of material fact remain for resolution at trial. *See id.* at 245–47. Plaintiff has established a reasonable connection between Mr. Varney's mesothelioma and death, Armstrong products containing or specified to contain asbestos, and Armstrong.

Plaintiff has offered evidence identifying Armstrong as the manufacturer of a product causing Mr. Varney's mesothelioma and death. Plaintiff may, and does, rely on Mr. Sanders to identify Armstrong as a manufacturer of products that were present at Mr. Varney's workplace; namely, the PSNS apprenticeship class and possibly the USS Midway and the USS Coral Sea.

*See Id.* at 246–47; *see generally* Dkts. 399-1, at 17; and 423-10. Mr. Sanders states that he and other apprentices, machinists, and insulators worked in confined spaces installing asbestos installation. Dkt. 423-10, at 4. Mr. Sanders adds that the work was "very dusty" and "I breathed dust from that work", that he never saw a warning about asbestos or cancer during his apprenticeship at PSNS, and that he never wore a dust mask or respirator during the apprenticeship. Dkt. 423-10, at 3–4. Mr. Sanders states, "I recall working with the following equipment at PSNS: [] Steam traps manufactured by Armstrong." Dkt. 423-10, at 3.

Plaintiff has offered evidence that Armstrong manufactured asbestos-containing products and products designed to utilize asbestos-containing parts. Dkt. 422, at 4–6. Plaintiff has also provided evidence that exposure to asbestos can cause serious diseases, including cancer. Dkt. 422, at 6–9. The Court observes that Plaintiff also attempts to show causation with the Report of Dr. John Maddox (see Dkt. 422, at 9), which is inadmissible as evidence regarding summary judgment and at trial. Dkt. 361; *see generally* § II(A), *supra*; and §II(E)(1), *infra*.

Nevertheless, even without the Declaration of Mr. Varney and the Report of Dr. John Maddox, Plaintiff has provided a minimally sufficient showing from which a reasonable factfinder could conclude that Armstrong manufactured products that exposed Mr. Varney to asbestos, and that those products caused Mr. Varney's mesothelioma and death. *See Lockwood*, 109 Wn.2d at 245–49. Viewing the evidence presented in the light most favorable to Plaintiff, it would be reasonable for a factfinder to infer that Mr. Varney was exposed to asbestos through Armstrong's products, and that Armstrong thereby caused Mr. Varney's injury. Plaintiff's evidence demonstrates that genuine issues of material fact remain for resolution at trial. Relying on the Sanders Declaration, Plaintiff has established more than a scintilla but a very, very thin,

reasonable connection between Mr. Varney's mesothelioma and death, alleged Armstrong products containing or specified to contain asbestos, and Armstrong.

Additionally, the Court has considered the *Lockwood* factors above in determining that there is sufficient and substantial evidence for a reasonable jury to find that causation has been established. The Sanders Declaration tilts factors one through six in Plaintiff's favor. Factor seven is neutral because of Mr. Varney's time working at the Hunter's Point Naval Shipyard from 1965 to 1968 (Dkt. 399-1, at 17) and at NSPS in 1962 and from 1968 to 1972. *See* Dkt. 423-10 (describing only Mr. Sander's apprenticeship at NSPS from 1957 to 1961).

Therefore, the Court should deny Armstrong's Motion for Summary Judgment (Dkt. 398).

**E. MOTION TO EXCLUDE INADMISSIBLE EVIDENCE**

"Pursuant to LCR 7(g)," Armstrong moves to exclude three exhibits that Plaintiff filed in opposition to the instant motion for summary judgment: Exhibit 9, the Declaration of Donald Varney; Exhibit 10, the Sanders Declaration; and Exhibit 30, the Report of Dr. John Maddox. Dkt. 426, at 2.

1. Exhibits 9 & 30

The Court has already ruled that Mr. Varney's affidavit and Dr. Maddox's opinion are inadmissible regarding summary judgment and at trial. Dkt. 361. Therefore, as to Exhibits 9 and 30, the Court should deny as moot Armstrong's motion to exclude.

2. Exhibit 10

Armstrong cites LCR 7(g) in support of its motion to exclude. However, LCR 7(g) relates to "Requests to Strike." *See* LCR 7(g). With respect to Exhibit 10, Armstrong's motion to exclude resembles a motion in limine to exclude evidence as inadmissible hearsay and for failure

to comply with discovery. *See* Dkt. 426, at 3 ("Armstrong … moves to exclude [the Sanders Declaration] as untimely and inadmissible hearsay").

Evidence submitted in connection with summary judgment does not have to be produced in a form that would be admissible at trial in order to avoid summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324–25 (1986). "Obviously, Rule 56 does not require the nonmoving party to depose her own witnesses. Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves[.]" *Id.* at 324. Here, the Sanders Declaration is an affidavit or declaration, which are listed among the evidentiary materials in Rule 56(c). *See* Fed. R. Civ. P. 56(c)(1)(A).

Nor should the Sanders Declaration be excluded under the rules of discovery. *See* Fed. R. Civ. P. 26(b)(2)(C)(ii). Armstrong argues that "Plaintiff had ample opportunity to obtain the subject information from Mr. Sanders during discovery in this action," which closed on April 22, 2019. Dkt. 426; *see generally* Dkt. 213. Beyond basic pretrial disclosures under Fed. R. Civ. P. 26(a)(3), which Armstrong does not touch on, it is unclear how Armstrong construes the Sanders Declaration to be a matter of untimely discovery. Rule 26 does not support Armstrong's argument to exclude. Should the Sanders Declaration necessitate additional discovery, the Court will consider such an issue upon motion from a party to the case.

Therefore, the Court should deny Armstrong's Motion to Exclude Exhibit 10 (Dkt. 426).

**F. OTHER POSSIBLE CLAIMS**

The operative complaint's causes of action are vague. *See* Dkt. 342, at 5 ("Plaintiffs claim liability based upon the theories of product liability, including not but limited to negligence, strict product liability …, conspiracy, premises liability, the former RCW 49.16.030, and any other applicable theory of liability, including, if applicable, RCW 7.72 et seq."). Many

ORDER ON DEFENDANT ARMSTRONG INTERNATIONAL, INC.'S MOTION FOR SUMMARY JUDGMENT AND MOTION TO EXCLUDE INADMISSIBLE EVIDENCE - 12

1 | theories or claims can be gleaned therefrom. *See, e.g.,* Dkt. 378 (in Defendant Warren Pumps,

2 | LLC's ("Warren") Motion for Summary Judgment, Warren apparently couched its arguments

3 | principally in maritime law, and it discussed Washington products liability as an alternative

4 | theory). In response to Armstrong's Motion for Summary Judgment, Plaintiff limits its

5 | discussion of claims and theories to just Washington products liability. *See* Dkt. 422, at 10–14.

6 | In this order, the Court has done the same. *See* § (II)(D), *supra*.

7 | Plaintiff's vague complaint and limited discussion are problematic. With respect to

8 | Washington products liability, *Lockwood* provides that, "instead of personally identifying the

9 | manufacturers of asbestos products to which he was exposed, a plaintiff may rely on the

10 | testimony of witnesses who identify manufacturers of asbestos products which were then present

11 | at his workplace." *Lockwood*, 109 Wn.2d at 246–47. Thus, the Sanders Declaration is applicable

12 | to Plaintiff's Washington product liability claim against Armstrong. *See* § II(D), *supra*.

13 | However, it is unclear, and perhaps doubtful, that the Sanders Declaration would be appropriate

14 | evidence in support of the other myriad claims that may be possible under Plaintiff's vague

15 | complaint.

### III. ORDER

Therefore, it is hereby **ORDERED** that:

- To the extent that Plaintiff moves for reconsideration of the April 17, 2019 order excluding Mr. Varney's affidavit and Dr. Maddox's report (Dkt. 422), the motion should be **DENIED**;

- Armstrong's Motion for Summary Judgment (Dkt. 398) is **DENIED;** and

- Armstrong's Motion to Exclude Inadmissible Evidence (Dkt. 426) is **DENIED** as to Exhibit 10, and **DENIED AS MOOT** as to Exhibits 9 and 30.

IT IS SO ORDERED.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing pro se at said party's last known address.

Dated this 7th day of June, 2019.

ROBERT J. BRYAN
United States District Judge